**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JASON LEOPOLD, *et. al.*, Plaintiffs, v. FEDERAL BUREAU OF INVESTIGATION, Defendant. | ) | Case No. 18-cv-2567-BAH |

**PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Under the Freedom of Information Act, government agencies bear the burden of proving that agency records withheld from the public are exempt under the statute. Here, Defendant FBI's exemption claims fail in two important ways. First, in addition to other deficiencies, FBI has not proven that the supplemental Kavanaugh investigation, which occurred in highly unique factual circumstances not present in the typical nominee background investigation, was part of any Presidential decision-making process, and the President's own words make clear that it was not; as a result, FBI's presidential communications privilege claims fail under established precedent. Second, while it may be true that the investigation involved issues of alcohol use and sexual "behavior," as FBI puts it—the details of which were discussed at length in a public Senate confirmation hearing and described by the Senate Judiciary Committee in its own 400-plus-page report—Judge Kavanaugh's limited privacy interests, if any, are outweighed by the public's interest in knowing "what the government was up to," namely, both to understand how the FBI conducted this important investigation and to assess its thoroughness in the face of criticism by multiple United States Senators.

## I. BACKGROUND

The substance of Judge Kavanaugh's confirmation hearings and the allegations made against him are well-known and need not be rehashed in great detail here. What is significant for present purposes is that at the conclusion of the Judiciary Committee confirmation hearing, Republican Senator Jeff Flake voted to advance the nomination from the Judiciary Committee only if the FBI would conduct a supplemental background investigation into the sexual-assault allegations against Judge Kavanaugh. Plaintiffs' Statement of Facts ("PSOF") ¶ 1. At the Senate Judiciary Committee's request, the President ordered the FBI to conduct a supplemental investigation to update Judge Kavanaugh's file. PSOF ¶ 2. As the Senate requested, the update was limited in scope and to be completed in less than one week. *Id.*

According to the Judiciary Committee, ***it*** determined the scope and timing of the investigation, not the White House: "The Senate Judiciary Committee will request that the administration instruct the FBI to conduct a supplemental FBI background investigation with respect to the nomination of Judge Brett Kavanaugh to be an Associate Justice on the Supreme Court. The supplemental FBI background investigation would be limited to current credible allegations against the nominee and must be completed no later than one week from today." PSOF ¶ 3.

The President has made clear that he was not reconsidering the nomination and did not request the supplemental investigation for the purposes of his own decision-making: "Just started, tonight, our 7th FBI investigation of Judge Brett Kavanaugh. He will someday be recognized as a truly great Justice of The United States Supreme Court!" PSOF ¶ 4. In response to a reporter's question about the Senate's request for the supplemental background investigation, the President stated: "I'm going to let the Senate handle that. They'll make their

decisions." PSOF ¶ 5.  When asked whether he had thought about a replacement for Judge Kavanaugh, the President stated: "Not even a little bit."  PSOF ¶ 6.  And when asked whether he was willing to reopen the background investigation, the President said he would "rely on . . . Senator Grassley," and would be "totally reliant on what Senator Grassley and the group decides to do."  PSOF ¶ 7.

Members of the Senate considered the supplemental background investigation report in reaching their decisions whether to vote to confirm him.  PSOF ¶ 8.  According to Senator Grassley, "the investigation found no hint of misconduct," and as a result, "I'll be voting to confirm Judge Kavanaugh."  PSOF ¶ 9.  Senator Collins said that "it appears to be a very thorough investigation." PSOF ¶ 10.  Other Senators, including Senators Feinstein and Schumer, disagreed with Senator Grassley's interpretation of the investigation and claimed that the report "looks to be the product of an incomplete investigation that was limited."  PSOF ¶ 11.

The Judiciary Committee has released a 400-plus-page summary of the investigations into allegations against Judge Kavanaugh on its website.  PSOF ¶ 12.  Judge Kavanaugh has asserted that he "was subjected to wrongful and sometimes vicious allegations. My time in high school and college, more than 30 years ago, has been ridiculously distorted."  Brett M. Kavanaugh, Wall St. J., *I Am an Independent, Impartial Judge*, Oct. 4, 2018.

## II.     FBI HAS NOT PROVEN ITS PRESIDENTIAL PRIVILEGE CLAIMS

### A.     The Supplemental Investigation Was Not Conducted for the Purpose of Presidential Decision-Making and Therefore Does Not Qualify for the Presidential Communications Privilege

Our Constitution does not permit Presidents to appoint Supreme Court Justices unilaterally.  Rather, it requires two separate acts: (1) the President must "nominate," and (2) the Senate must "consent."  U.S. Const. art. II § 2.  In an effort to expand the privilege, the FBI blurs

the line between these two separate acts and disregards the actual purpose of the supplemental investigation.

As the FBI admits, only records and communications "in aid of a decision to be made by the President" are subject to the presidential communications privilege. Dkt. # 23-1 at 13-14. That is because the privilege exists only to shield "the President's personal decision-making process," *id.* at 14 (citation and quotation omitted), and thus, "the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision-making process is adequately protected." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997). "[N]o court has suggested that the mere fact that a President's direct involvement in a communication, either as an author or a recipient, renders it automatically protected." *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 28 (D.D.C. 2013).

Here, it is clear that the President did not ask for the supplemental investigation to further his own decision-making to "nominate," but rather, to facilitate the Senate's decision-making on whether to "consent." While the declaration of a member of the FBI's FOIA staff makes vague reference to "an effort to inform the President's decision to continue with his nominee," Dkt. # 23-3 at ¶¶ 61-62, that improperly vague statement lacks foundation establishing personal knowledge on the issue and should be rejected under the plain text of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion ***must*** be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis

added)); *see also generally* Fed. R. Civ. P. (containing no exception for Freedom of Information Act cases).[1]

But even setting aside FBI's evidentiary shortfall, the President's own statements make clear that the supplemental investigation was ordered at the request of and defined in scope ***by the Senate*** as a condition on proceeding with the President's nomination of Judge Kavanaugh. Thus, the investigation was conducted to assist the Senate, not the President, in a decision-making process, and the documents cannot qualify for the presidential communications privilege.

Because FBI has not proven that the investigation was conducted to assist in any presidential decision-making, it has not met its burden under Exemption (b)(5).[2]

### B. The President's Voluntary Release of the Materials to the Senate Judiciary Committee Is Incompatible with the Presidential Communications Privilege and Results in Waiver

Even if the FBI had proven that the report was for the purposes of presidential decision-making, FBI does not cite any case applying the presidential communications privilege to allegedly privileged information that was provided to another branch of government. While it may be the case that the deliberative process privilege can survive release to Congress due to Congress's "right to receive information not available to the general public," Dkt. # 23-1

---

[1] FBI cites no law permitting statements devoid of foundation to support a key substantive fact supporting a FOIA exemption claim, and to the extent any such law could be read to hold as much, it contradicts the plain text of the Rules and must be rejected under *Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356, 2364 (2019) (rejecting long-standing D.C. Circuit policy- and legislative-history-based pro-disclosure interpretation of Exemption 4 that was not supported by the plain text of the statute).

[2] Plaintiffs recognize that under current D.C. Circuit law, a record need not have been seen by the President to qualify, but contend for the purposes of potential appeal that the D.C. Circuit incorrectly interpreted the scope of the privilege on this point. *See In re Sealed Case*, 121 F.3d at 748 (noting, before ruling to the contrary, that there are "strong arguments in favor of holding that the presidential communications privilege applies to only those communications that directly involve the President"). There is no evidence in the record that the President ever reviewed any of the records being withheld.

(citation and quotation omitted), the presidential privilege stands in the sharpest of contrast because the "presidential privilege is rooted in constitutional separation of powers principles[.]" *In re Sealed Case*, 121 F.3d at 745; *see also Nixon v. Fitzgerald,* 457 U.S. 731, 753 (1982) (same); *United States v. Nixon*, 418 U.S. 683, 705-06 (1974) (same); *Judicial Watch, Inc. v. United States Dep't of Def.*, 913 F.3d 1106, 1110 (D.C. Cir. 2019) (same). Indeed, *In re Sealed Case* specifically noted that the deliberative process exemption, unlike the presidential communications privilege, was rooted only in common law, such that "congressional or judicial negation of the presidential communications privilege is subject to greater scrutiny than denial of the deliberative privilege." 121 F.3d at 745. Thus, the unique character of the presidential communications privilege makes a tremendous difference "conceptually" on this point. *See* Dkt. # 23-1 at 19. By releasing the investigation materials to the Judiciary Committee, the President waived any presidential communications privilege. *See generally In re Sealed Case*, 121 F.3d at 741 (executive privileges can be waived).

### C. Much Information Has Been Revealed by the Judiciary Committee, Presumably with the Consent of the White House, Waiving Privilege

As the FBI notes, access to FBI investigations of nominees is governed by a memorandum of understanding with "strict confidentiality protections." Dkt. # 23-3 at ¶ 61. But the Judiciary Committee disclosed to the public an executive summary of the findings, including the identities of people interviewed. PSOF ¶ 13. Given these "strict" confidentiality restrictions, as FBI describes them, the only plausible explanation would seem to be that the White House consented to the Judiciary Committee's release of this information. Thus, even if release to Congress did not waive the presidential communications privilege on its own, any privilege is waived by the Judiciary Committee's release of an executive summary of allegedly privileged materials, at least as to the same information.

### D. The Records That Were Not Conveyed to the White House Counsel's Office Do Not Qualify for the Privilege

The FBI concedes that it cannot prove that some of the materials were ever provided to the White House Counsel's Office, let alone to the President. This includes "FBI agents' handwritten interview notes and a small number of administrative note pages." Dkt. # 23-1 at 16. While the FBI claims that these materials "memorialize actual communications with the President or his staff," Dkt. # 23-1, that assertion lacks evidentiary support and is implausible given the nature of the materials: how could notes of what witnesses told the FBI reflect on any communications with the President or his staff? And it is no answer to say that they would indicate the scope of an investigation ordered by the President because he told the FBI "to interview whoever they deem appropriate, at their discretion," going so far as to say that a media outlet "incorrectly reported (as usual) that I was limiting the FBI investigation of Judge Kavanaugh . . . Please correct your reporting!" PSOF ¶ 14. Thus, the privilege does not apply to these FBI notes and other materials not shared with the White House.

### E. The President Has Not Personally Asserted the Presidential Communications Privilege

Finally, the President has not personally asserted the presidential communications privilege. As explained in detail below, Exemption 5 does not actually apply to this particular privilege, and case law outside the FOIA context suggests that the President must personally assert the Constitutional privilege.

Exemption 5 protects only "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The D.C. Circuit has held that communications between an agency and a non-agency in furtherance of the non-agency's decision-making process are ineligible for the exemption. *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 574 (D.C. Cir. 1990); *Rockwell*

*Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001) ("Observing that Exemption 5 protects only inter- or intra-agency memoranda, and that Congress was not an 'agency' within the meaning of the statute[,] we concluded that the letter was not covered by Exemption 5.").

The President and his immediate advisors "whose sole function is to advise and assist the President" are not "agencies" under FOIA. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quoting H.R. Rep. No. 93-1380, at 15; *Moore v. FBI*, 883 F. Supp. 2d 155, 161 (D.D.C. 2012); *Nat'l Sec. Archive v. Archivist of the United States*, 909 F.2d 541, 544 (D.C. Cir. 1990)); *see also* Dep't of Justice, Guide to the Freedom of Information Act ("DOJ FOIA Guide"), Procedural Requirements, at 5-6. Therefore, communications between the FBI and the White House Counsel's Office in furtherance of the President's decision-making process are not "inter-agency or intra-agency memorandums" and Exemption (b)(5) itself cannot apply to them.

While another court in this District has found that "Exemption 5 has been interpreted to include materials subject to the presidential communications privilege as well as materials subject to the deliberative process privilege," citing *Judicial Watch v. Department of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), that proposition, though understandable in light of the language of *Judicial Watch*, is not actually correct. *Judicial Watch* relies for this proposition exclusively on *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n. 16 & 150 (1975), but that decision makes no mention of the presidential communications privilege specifically and does not analyze the text of Exemption 5 to determine whether such communications are "inter-agency or intra-agency memorandums or letters."[3] *See NLRB*, 421

[3] Similarly, *Loving v. Department of Defense* relies on *Baker & Hostetler LLP v. Department of Commerce* without analysis, and *Baker & Hostetler* relies on *Judicial Watch* without analysis.

U.S. at 149-150.  And as discussed above in the context of communications with Congress, the plain text of the exemption, along with case law establishing both that the President and his close advisors are not an "agency" and that communications from an agency to a non-agency for the purposes of the non-agency's decision-making are outside the scope of Exemption 5, require the conclusion that the presidential communications privilege as asserted here cannot apply under Exemption 5.

This does not mean that the President and his close advisors are powerless to withhold communications between them and an agency on matters involving the President's official decision-making.  It does mean, however, that any such resistance to disclosure must be grounded in the President's ***Constitutional*** right to assert the presidential communications privilege in response to the statutory mandate that such records otherwise be disclosed, not Exemption 5 itself.  The question then becomes whether the President has complied with those requirements.

Supreme Court precedent suggests that "the President must assert the presidential communications privilege personally." *In re Sealed Case*, 121 F.3d at 745 n.16 (citing *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953)).  In *In re Sealed Case*, the D.C. Circuit was not required to resolve this issue, however, because the supporting affidavit from the former White House Counsel specifically stated that the President directed him to invoke the privilege. *Id.* The decision makes clear, though, that this precedent dates back to *United States v. Burr*, 25 F.Cas. 187, 192 (1807), which held that President Jefferson personally had to identify the passages he deemed confidential and could not leave this determination to the U.S. Attorney.  *In re Sealed Case*, 121 F.3d at 745.  Thus, in the absence of authority to the contrary from the D.C.

---

550 F.3d 32, 37 (D.C. Cir. 2008); 473 F.3d 312, 321 (D.C. Cir. 2006).  None of these cases address the arguments Plaintiffs make here.

Circuit or Supreme Court, this Court should find that the President must personally assert the presidential communications privilege in this case before FBI can rely on it. While the District Court cases the FBI cites discuss policy reasons against such a requirement in a FOIA case, those policy reasons are irrelevant in light of the plain text of the statute limiting the exemption to "inter-agency or intra-agency" records. *See Argus Leader,* 139 S. Ct. at 2364 (rejecting long-standing D.C. Circuit policy- and legislative-history-based pro-disclosure interpretation of Exemption 4 that was not supported by the plain text of the statute).

Here the record indicates only that the privilege was asserted by unidentified people in the White House Counsel's Office. Dkt. # 23-3 at ¶ 62. There is no indication that it has been asserted by the President himself. *See id.* As a result, the FBI cannot rely on the presidential communications privilege.

## III. FBI HAS NOT PROVEN ITS "LAW ENFORCEMENT" CLAIMS

FBI also contends that various information is exempt under several of the prongs of Exemption 7. As FBI concedes, it must show that the supplemental background investigation was "compiled for law enforcement purposes." Dkt. # 23-1 at 22.

The D.C. Circuit has explained that even when records are possessed by a law enforcement agency like the FBI, when, as here, the asserted claim is that the records pertain to a specific investigation (as opposed to things like investigative protocols generally), the agency must show "a connection between an individual or incident and a possible security risk or violation of federal law." *Ctr. for Nat. Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003). That was not difficult for the government to show in the cases cited by the FBI because they related to security clearances for federal employees and the legal eligibility of those employees for the particular positions. *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir.

2007); *Mittleman v. Office of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996); *Sheridan v. U.S. Office of Pers. Mgmt.*, 278 F. Supp. 3d 11, 20 (D.D.C. 2017); *Henderson v. Office of the Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 178 (D.D.C. 2016); *Miller v. United States*, 630 F. Supp. 347, 348 (E.D.N.Y. 1986).

None of these cases are analogous to the political nomination of a Supreme Court justice, however, and the FBI's own affidavit makes clear that the investigation at issue here was done "to assist the President with [the] constitutional decision-making role" of nominating justices and determining their "suitability for the position." Dkt. # 23-3 at ¶¶ 51-52. Because the FBI has not established that the investigation was connected to any security risk or violation of federal law, it does not qualify as a law enforcement matter under Exemption 7.

Further, the root of the FBI's precedent that background investigation documents are necessarily "compiled for law enforcement purposes" is the pro se, per curium opinion from the D.C. Circuit in *Mittleman*, 76 F.3d 1240. *See Morley,* 508 F.3d at 1128 (relying on *Mittleman* without independent substantive analysis). The basis for that decision was that the "principal purpose of a background investigation is to ensure that a prospective employee has not broken the law or engaged in other conduct making her ineligible for the position," along with the observation that "law enforcement purposes" is not limited to investigations into crimes, but can include "civil investigations" and efforts at crime prevention. *Mittleman*, 76 F.3d at 1243. But these observations do not inherently require the conclusion that all background investigations for federal employment purposes are for "law enforcement purposes." *See City of Fort Worth v. Cornyn*, 86 S.W. 3d 320, 325 (Ct. App. Tx. 2002) ("[T]he [*Mittleman*] court offered no support for its holding, other than a conclusory assertion, that because law enforcement encompassed the

prevention of crime, background investigations conducted to assess an applicant's qualification must relate to law enforcement. We are not persuaded by such reasoning.").

Further, conspicuously absent from the *Mittleman* decision is any analysis of the plain text of the term "law enforcement." This is important because the Supreme Court recently overruled longstanding D.C. Circuit precedent that had interpreted FOIA Exemption 4 as having a "substantial competitive harm" requirement found nowhere in the text of the statute. *Argus*, 139 S. Ct. at 2363. The Court disapproved of "such a casual disregard of the rules of statutory interpretation" because "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Id*. at 2364.

The plain meaning of "law enforcement" cannot be read to include background investigations in furtherance of a judicial nomination review by the Senate (or by the President, for that matter). *See* Black's Law Dictionary (4th revised ed. 1968) (defining "law" as "[t]hat which must be obeyed and followed by citizens, subject to sanctions or legal consequences" and "enforce" as "[t]o put into execution; to cause to take effect; to make effective"); Webster's Third New International Dictionary (1964) (defining "law" as "a binding custom or practice of a community" and "enforcement" as "the compelling of the fulfillment (as of law and order)"). Whatever the outer bounds of these terms may be, they do not include background investigations in furtherance of a discretionary decision whether to nominate or consent to the nomination of a judge.

Moreover, Exemption 6, which requires the government to meet a higher standard than Exemption 7, applies to "personnel and medical files and similar files." U.S.C. § 552(b)(6). On a continuum from records related to the enforcement of civil or criminal law on the one end, and personnel and "similar" files on the other, a background investigation related to a nomination to

a federal office is much closer to the latter. Thus, the background investigation records here should be considered under Exemption 6, not through a non-textualist interpretation of "law enforcement." *See Vymetalik v. FBI*, 785 F.2d 1090, 1096 (D.C. Cir. 1986) ("The [Privacy Act] itself supports this distinction between records generated by a law enforcement investigation and those generated by an employment investigation. As already noted, the former is governed by (k)(2) and the latter is governed by (k)(5). To hold that all employment investigation records fall within the law enforcement records exemption would read subsection (k)(5), with its specific limitation, out of the statute.").

## IV.     FBI HAS NOT PROVEN THAT ANY PRIVACY RIGHTS OUTWEIGH THE PUBLIC INTEREST IN DISCLOSURE

Exemption 6 applies only where release of the requested information "would" constitute a "clearly unwarranted" invasion of personal privacy. 5 U.S.C. § 552(b)(6). The presumption in favor of disclosure under Exemption 6 "is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002); *see also see also Consumers' Checkbook Ctr. for the Study of Servs. v. HHS,* 554 F.3d 1046, 1057 (D.C. Cir. 2009) (FOIA's "presumption favoring disclosure . . . is at its zenith under Exemption 6").

Plaintiffs do not object to the withholding pursuant to Exemption 6 of the names and identifying information of any third-parties who provided information to the FBI to the extent those names (if any) were not already released by the Judiciary Committee or are otherwise public, the names of FBI agents and staff, the names and identifying information of third-parties merely mentioned, Judge Kavanaugh's home address, or the names and identifying information of non-FBI government personnel. Nor do Plaintiffs contend that these sorts of background investigation files are wholesale subject to disclosure under FOIA in all instances.

As to the remaining information, the FBI has not proven its Exemption 6 claim, or its Exemption 7(C) claim to the extent Exemption 7 even applies to these kinds of records. Plaintiffs do not dispute that these records meet the "personnel" or "similar" files requirement. But under the unique facts of this particular supplemental background investigation, the key substantive information about the investigation should be released as Plaintiffs requested because the public interest in understanding and judging the veracity of the FBI investigation outweighs the privacy interest in information about allegations that have already been the subject of lengthy public hearings and a 400-plus-page report released by the Judiciary Committee, and that involve a nominee for one of the most powerful government positions in the world.

### A. Judge Kavanaugh Has a *De Minimis*, or at Most a Diminished Privacy Right in the Supplemental Background Investigation

At the time of the supplemental background investigation, Judge Kavanaugh was a nominee for one of the most powerful positions in the United States government. As a result, his privacy interests are at most "diminished." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 n.9 (D.C. Cir. 1995).

As discussed above, however, the Senate Judiciary Committee has released a 400-plus-page report on the Kavanaugh allegations and investigation, including the supplemental background investigation, on top of widely viewed Senate confirmation hearing including testimony from Dr. Ford and Judge Kavanaugh. According to the DOJ itself, "[i]ndividuals generally do ***not*** possess substantial privacy interests in information that is particularly well known or is widely available within the public domain." DOJ FOIA Guide, Exemption 6, at 30 (emphasis added).

### B. The Public Interest in Understanding How the FBI Conducted the Investigation and Judging the Adequacy of its Efforts Outweigh Any Privacy Interests

Even if Judge Kavanaugh has some privacy interest, however, that interest is outweighed by the public interest in disclosure in two distinct ways.

First, as the D.C. Circuit explained in *Citizens for Responsibility and Ethics in Government v. Department of Justice*, even in the absence of any evidence of wrongdoing by the investigating agency, "we have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy[.]" 746 F.3d 1082, 1093 (D.C. Cir. 2014) (collecting cases); *see also Prop. of the People, Inc. v. Dep't of Justice*, No. 17-CV-1728 (EGS), 2019 WL 4644572, at *9 (D.D.C. Sept. 24, 2019) (cognizable public interest in records that would show how the FBI handled the issue of threats posed by Russian intelligence to the U.S. political system); *Jett v. FBI*, No. 14-CV-00276 (APM), 2016 WL 107912, at *4 (D.D.C. Jan. 8, 2016) ("Here, the public unquestionably has a substantial interest in learning how federal law enforcement personnel handled the criminal investigation of a sitting Congressman—even if not a high-ranking Member[.]"). While Plaintiffs contend that a background investigation of this sort is not a law enforcement activity, the public interest in understanding the way in which the FBI conducted a background investigation related to a Supreme Court nomination is every bit as important, and consistent with the purpose of FOIA, as a true law enforcement proceeding. *See also Kimberlin v. Dep't of Justice,* 139 F.3d 944, 948 (D.C. Cir. 1998) (cognizable public interest in how DOJ conducted "internal disciplinary processes," which the court considered to be a law enforcement matter). And if the Court agrees with the FBI that a background investigation of this sort is a law enforcement matter, then so too would it necessarily fall within this line of cases recognizing a public interest in such matters.

Moreover, the D.C. Circuit explained in *CREW* that when an "investigation implicated a public official as prominent as the former Majority Leader of the House of Representatives" this "further raises the stakes" and supports a finding of public interest. *CREW*, 746 F.3d at 1094. A life-tenured Supreme Court justice is every bit as "prominent" a "public official" as a Congressional majority leader, which further supports finding that any privacy interests are outweighed by the public interest in disclosure. While the FBI asks this Court to deem the allegations against Judge Kavanaugh nothing more than "allegations about alcohol consumption and sexual behavior" in Judge Kavanaugh's "youth," Dkt. # 23-1 at 36, they are clearly much more than that. They involved allegations of not just sexual "behavior" but a sexual assault, and the accuser testified before Congress at length regarding the traumatic impact she alleges to have suffered throughout her life. And if there were any question, these allegations were serious enough to prompt a Republican member of the Senate Judiciary Committee to force the FBI to conduct a supplemental investigation into these issues. Thus, this case is a far cry from the facts of any of the background-investigation cases relied upon by the FBI.

Nor does it matter whether these accusations were deemed, by the FBI, to have been "unsubstantiated." Dkt. # 23-1 at 35. Tom DeLay had not been charged with any crimes in the *CREW* case, but nonetheless the D.C. Circuit found a cognizable public interest. 746 F.3d at 1087. And contrary to the contention that we should simply take the FBI's word for it that the allegations were, in fact, unsubstantiated, "FOIA, at its core, operates on the assumption that it is for the public to know and then to judge." *Bartko v. Dep't of Justice*, 898 F.3d 51, 69 (D.C. Cir. 2018) (quotation and citation omitted).

Second, Plaintiffs also meet the standards set forth in *National Archives & Records Administration v. Favish* for public interest based on at least potential "negligen[ce]" by

government officials. 541 U.S. 157, 174 (2004). Under *Favish*, Plaintiffs need only "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* Here, a reasonable person would be justified in relying on the statements of multiple United States Senators who reviewed the investigation materials and were familiar with the issues to believe that shortcomings in how the FBI conducted the investigation "might have occurred."

Especially because Judge Kavanaugh's privacy interests are at best diminished, each of these two versions of public interest outweigh those interests.

## V. CONCLUSION

For these reasons, summary judgment should be granted to Plaintiffs and denied to the FBI for the issues challenged in this brief. The FBI's motion as to any remaining issues should be denied as moot.

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

______________________________

Attorneys for Plaintiff

Matthew Topic
Joshua Burday
Merrick Wayne
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com

**CERTIFICATE OF SERVICE**

I, Matthew Topic, an attorney, hereby certify that on December 16, 2019, I caused the foregoing PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew V. Topic*